# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50048 | **DATE** | 6/10/2003 |
| **CASE TITLE** | R.V.S., LLC. vs. CITY OF ROCKFORD | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, RVS's motions for preliminary and permanent injunctions are denied. Judgment is entered in favor of the City. This case is hereby dismissed in its entirety with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 10 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge | | 6-10-03 | |
| | | U. S. DISTRICT COURT | date mailed notice | |
| /SEC | courtroom deputy's initials | 2003 JUN 10 PM 2:02 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# United States District Court
## Northern District of Illinois
### Western Division

R. V. S., LLC

v.

The City of Rockford

**JUDGMENT IN A CIVIL CASE**

Case Number: 03 C 50048

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that RVS's motions for preliminary and permanent injunctions are denied. Judgment is entered in favor of the City. This case is hereby dismissed in its entirety with prejudice.

Michael W. Dobbins, Clerk of Court

Date: 6/10/2003

Susan M. Wessman, Deputy Clerk

R. V. S., LLC,                          )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )  No. 03 C 50048
                                        )
THE CITY OF ROCKFORD                    )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff, R.V.S., LLC ("RVS"), filed this action against
defendant, the City of Rockford ("City"), seeking a temporary
restraining order ("TRO") and to preliminarily and permanently
enjoin the City from enforcing its ordinance number 2002-308-0
requiring certain business establishments identified as "exotic
dancing nightclubs" to obtain a zoning special use permit and
making locations not more than 1000 feet from a church, school,
residential district, or another exotic dancing nightclub
ineligible for such a special use permit. RVS, prior to the
adoption of the ordinance, was preparing to open a business
establishment which arguably falls within the definition of an
exotic dancing nightclub. The premises leased for this business
is within 1000 feet of a residential district and thus ineligible
for a special use permit under the ordinance. RVS contends the
ordinance violates the First Amendment to the U.S. Constitution.

It argues the ordinance is vague, overbroad, an unlawful prior restraint on expression, was not properly adopted according to the zoning ordinance, and was not adopted as a valid attempt to control deleterious secondary effects associated with exotic dancing. Jurisdiction and venue are proper under 28 U.S.C. § 1331, 1391. The court denied the request for a TRO and subsequently conducted a bench trial combining the preliminary and permanent injunction hearings. This memorandum opinion and order sets forth the court's findings of fact and conclusions of law.

## II. **FACTS**

On August 26, 2002, at a meeting of the Rockford City Council, Alderman Douglas Mark suggested the adoption of a resolution amending the City's zoning ordinance to add adult entertainment, including uses such as exotic dancing, to uses that require a special use permit. The matter was referred to the council's codes and regulations committee. On September 30, 2002, the city council adopted the codes and regulations committee's report recommending that the City file text amendments to the zoning ordinance regarding exotic dancing night clubs. Accordingly, the text amendments were filed with the City's zoning officer pursuant to the City's zoning ordinance and a hearing was held on the proposed text amendments by the zoning board of appeals ("ZBA") on November 19, 2002, which voted to

approve the text amendments. On November 27, 2002, the codes and regulations committee of the city council voted to recommend sustaining the ZBA's decision to approve the text amendments. On December 9, 2002, the city council adopted ordinance 2002-308-0.[1]

The minutes of the November 19, 2002, ZBA meeting reflect that City Attorney Kathleen Elliott and Alderman Mark testified concerning the proposed text amendment. The minutes contain the following passage: "It is the City's experience that this use in a concentrated area or near residential uses attracts prostitution and other problems that are part of this atmosphere. Alderman Mark stated there have been incidents where liquor sales were procured with the intent of establishing dancing clubs. The proposed text amendments would allow the City more control over the location of these type of clubs to prevent adverse effects on

---

[1] Ordinance 2002-308-0 amended the City's zoning ordinance definition section by adding the following: "EXOTIC DANCING NIGHTCLUB: A business establishment at which one or more exotic dancers perform for or provide entertainment to a patron or patrons. Exotic dancer means any person, whether compensated or not, who dances, performs or entertains by doing a 'striptease' or performs an erotic dance or other movements which include the performer touching their breasts or pubic area, or performing any movements simulating sexual activity while wearing fully opaque clothing covering over primarily only the genitalia, pubic region, buttocks and, if the person is female, the portion of the breast below the top of the areola." Ordinance 2002-308-0 further amends the zoning ordinance to allow exotic dancing nightclubs only in certain zoning districts and only upon obtaining a special use permit. It further denies eligibility for a special use permit for an exotic dancing night club in any of these districts unless it is more than 1000 feet from a church, school, residential district, or another exotic dancing nightclub.

3

adjoining neighborhoods."  The minutes of the council's codes and

regulations committee meeting for November 27, 2002, contain the

following:  "Although they are not considered sexually oriented

business [sic], strip clubs have similar secondary effects in the

neighborhood as sexually oriented businesses."  Ordinance 2002-

308-0 does not contain any preamble or legislative findings and

the journal of proceedings for the city council meeting at which

it was adopted does not state any findings.

## III. ANALYSIS

### A. Ordinance Adoption Procedure

RVS argues the ordinance is invalid because the City failed

to follow the procedure for adopting a text amendment set forth

in the City's zoning ordinance.  The zoning ordinance provides

the council must, upon receipt of a ZBA recommendation on a text

amendment, take action "not less than sixty (60) days

thereafter."  It is undisputed the City acted in less than sixty

days.  The City presented evidence at trial that "less" was a

scrivener's error, that "more" was actually intended, and that

the City's practice was always to require action in not more than

sixty days.

A city's failure to comply with its own procedural

ordinances in adopting an ordinance is insufficient under

Illinois law to invalidate the ordinance adopted.  See Nevel v.

Village of Schaumburg, 297 F.3d 673, 680 (7th Cir. 2002).

Rather, the ordinance may be invalidated only if the enactment violates federal or state law. Id. at 679. RVS argues the failure to follow the procedure was a procedural due process violation. RVS contends it was ready to open its business and would have been open before the city council could have passed the ordinance if the council had waited the required sixty days. However, RVS does not explain how this is a deprivation of its liberty or property without due process. A violation of local law is not a denial of due process. Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 467 (7th Cir. 1988). Legislative bodies may enact generally applicable laws without affording affected parties notice and an opportunity to be heard even where the legislation is provoked by fear of one particular actor. See Pro-Eco, Inc. v. Board of Comm'rs of Jay County, Ind., 57 F.3d 505, 513 (7th Cir.), cert. denied, 516 U.S. 1028 (1995). The fact that a statute (or statute-like regulation) applies across the board provides a substitute safeguard. Philly's v. Byrne, 732 F.2d 87, 92 (7th Cir. 1984). Here, the City adopted a generally applicable ordinance. It conducted a ZBA hearing on the amendments which had been properly noticed.[2] No one appeared in opposition. This is sufficient process for the adoption of

_____

[2] RVS asserted in its TRO brief that publication notice was not properly given but presented no evidence of this at trial. The City submitted with its TRO brief a copy of a publication notice which appears to conform to Illinois law. See 65 ILCS 5/11-13-14.

the ordinance.  See Coniston, 844 F.2d at 469.  The adoption of

the ordinance did not violate federal or state law and cannot be

overturned on that basis.  See Nevel, 297 F.3d at 769.

## B. Prior Restraint

RVS raises a facial challenge to the zoning ordinance by

arguing it is an unconstitutional prior restraint on speech

because it gives City officials unbridled discretion to deny an

application for a special use permit and does not limit the time

within which the decisionmaker must issue a permit.  RVS has not

sought and been denied a special use permit.  The City contends

RVS lacks standing to challenge the special use provisions as a

prior restraint because the location at which RVS was about to

open is within 1000 feet of a residential district and,

therefore, is ineligible for a special use permit anyway.  RVS

presented evidence at trial that it would consider other

locations in Rockford that are not disqualified by the 1000 foot

requirement but was deterred by the discretionary nature of the

special use ordinance from pursuing other locations.

The Constitution limits federal judicial power to actual

cases or controversies.  U.S. Const. art. III, § 2; see Friends

of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180

(2000).  The doctrine of standing is an essential element of the

article III case or controversy requirement.  See Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To establish

standing under article III, RVS must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable court decision. Laidlaw, 528 U.S. at 180-81. The City argues RVS does not meet the third prong of this test because even if the court were to strike the discretionary portions of the ordinance, RVS's location would still be disqualified by the 1000 foot requirement. However, RVS presented evidence that the existence of the discretionary provisions of the special use ordinance deterred it from seeking other locations that were not disqualified by the distance provisions. The City did not produce any evidence to the contrary. An order invalidating the discretionary provisions of the ordinance would redress RVS's injury by allowing it to either seek locations as a matter of right so long as the locations met the distance requirement or operate at its current location since it is not clear that the distance requirement, which is included only as a part of the special use scheme, would survive a decision that the special use provisions are an unlawful prior restraint. In that case, RVS could receive redress even at the current location. RVS has standing to challenge these provisions of the special use

7

ordinance.

A licensing scheme is an unconstitutional prior restraint where it gives government officials unbridled discretion or where it does not limit the time in which a decisionmaker must act. See FW/PBS v. City of Dallas, 493 U.S. 215, 225-26 (1990) (opinion of O'Connor, J.) RVS argues the zoning ordinance gives the City unbridled discretion to deny a special use permit. The zoning ordinance requires the ZBA to make specific findings in order to recommend approval of a special use permit to the city council.[3] If these findings are not made, and the ZBA, therefore, does not recommend approval, then, under the zoning

---

[3] Section 1603.5 (A). of the zoning ordinance provides: " For the [ZBA] to recommend approval of an application for any requested Special Use Permit, it must find that each of the following items are met: 1. The establishment, maintenance, or operation of the Special Use Permit will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare. 2. The Special Use Permit will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish or impair property values within the neighborhood. 3. The establishment of the special use will not impede the normal orderly development and improvement of the surrounding property for uses permitted in the district. 4. Adequate utilities, access roads, drainage and/or necessary facilities have been, are being, or will be provided. 5. Adequate measures have been or will be taken to provide ingress or egress so designated as to minimize traffic congestion in the public streets. 6. The special use shall, in all other respects, conform to the applicable regulations of the district in which it is located, except in those instances wherein either the use of the property is nonconforming, in which case, exceptions may be made as appropriate to result in the nonconforming use, or property becoming compatible with the existing character of the area. ROCKFORD, ILL., ZONING ORDINANCE § 1603.5 (A).

ordinance, the City can only grant the special use permit by a two-thirds majority of the city council. ROCKFORD, ILL., ZONING ORDINANCE § 1603.6 (2002). With ZBA approval only a simple majority is required. Id. Either way, whether to grant a special use permit is, on the face of the zoning ordinance, discretionary to the city council. If the city council approves the special use permit, it must do so by ordinance, accompanied by findings of fact based on the factors in § 1603.5 (A).[4] Id. RVS contends that since among the facts that must be found in order to grant a special use permit are that the special use will not be detrimental to public safety and morals, not be injurious to the use and enjoyment of other property in the immediate vicinity, nor substantially diminish or impair property values, and since the City seeks to justify ordinance 2002-308-0 on the basis that exotic dancing night clubs create deleterious secondary effects such as increased crime and decreased property values, that granting a special use permit would require findings that undercut the secondary effects rationale and therefore no special use permit could ever be granted for an exotic dancing nightclub. This argument does not take account of Illinois law concerning special uses. The court construes a city ordinance

_____

[4] Section 1603.6 actually provides the findings of fact are to be based on the factors listed in "Subsection (A) of this Section." The only Subsection A in Section 1603 dealing with findings of fact is contained in § 1603.5.

under state law.  Weinberg v. City of Chicago, 310 F.3d 1029,
1035 (7th Cir. 2002).

In City of Chicago Heights v. Living Word Outreach Full
Gospel Church & Ministries, Inc., 749 N.E. 2d 916 (Ill. 2001),
the Illinois Supreme Court considered a special use ordinance
which required satisfying nearly identical criteria as the
required findings of fact in § 1603.5 (A).  The court noted that
when a zoning ordinance authorizes a use as a special use in a
zoning district it constitutes a legislative finding by the
municipality that the particular use governed by the special use
ordinance is compatible with the surrounding property uses in
that area.  Id. at 927.  A special use permit can be denied only
when granting it "would result in an adverse effect upon
adjoining and surrounding properties unique and different from
the adverse effect that would otherwise result from the
development of such a special exception use located anywhere
within the zone."  Id. at 929 (quoting 3 E. Ziegler, Rathkof's
Law of Zoning & Planning § 41.08, at 41-36 (4th ed. 1992)
(internal quotation marks omitted)).  The appropriate inquiry is
whether there are facts and circumstances showing that a
particular use proposed at a particular location would have any
adverse effects above and beyond those inherently associated with
the use wherever it is located in the zoning district.  Id.

By adopting an ordinance allowing exotic dancing nightclubs

10

as special uses in certain districts, the City made a legislative finding that exotic dancing nightclubs were compatible with other uses in the district. See id. The City, therefore, could not deny an application for a special use permit for an exotic dancing nightclub without finding facts that show that the particular exotic dancing nightclub at the particular proposed location would have adverse effects above and beyond those associated with the same use elsewhere in the zoning district. See id. The City does not have unbridled discretion to deny a special use permit application. An exotic dancing nightclub must be granted a special use permit in one of the authorized zoning districts unless the City finds that a particular applicant at a particular location creates adverse effects above and beyond those usually associated with an exotic dancing nightclub. Since all exotic dancing nightclubs are engaging in the same type of constitutionally protected expression, that expression cannot be the basis for a special use permit denial nor can the alleged deleterious secondary effects of exotic dancing nightclubs generally. Because Illinois law imposes substantial limits on the City's discretion, that discretion is not so broad as to constitute an unlawful prior restraint on expression.

RVS also argues the lack of a time limit within which the City must act creates an unlawful prior restraint. "A scheme that fails to set reasonable time limits on the decisionmaker

creates the risk of indefinitely suppressing permissible speech."
FW/PBS, Inc., 493 U.S. at 227. The concern is that the lack of a
time limit is simply another way to give the government official
unfettered discretion, in effect, to deny a permit by delaying a
decision indefinitely. See MacDonald v. City of Chicago, 243
F.3d 1021, 1030 (7th Cir. 2001),, (citing Graff v. City of
Chicago, 9 F.3d 1309, 1335 (7th Cir. 1993)(en banc)(Ripple, J.,
concurring), cert. denied, 511 U.S. 1085 (1994), cert. denied,
534 U.S. 1113 (2002).

RVS argues the zoning ordinance does not require action on
an application within any period of time. It claims indefinite
delay is possible both at the ZBA and city council stages of the
process because the ZBA is not required to ever commence or
conclude a hearing on a special use application and the city
council must wait at least sixty days before it can act on a ZBA
recommendation but is not required ever to act. Additionally,
RVS contends the city council and ZBA can keep the application in
a perpetual loop by the council sending the application back to
the ZBA each time the ZBA sends it to the council. The zoning
ordinance requires the ZBA to hold at least one public hearing on
a proposed special use permit. ROCKFORD, ILL., ZONING ORDINANCE §
1603.3 (2002). It does not set a deadline for commencing the
hearing. It provides the ZBA must make a decision on the
proposed special use within thirty-five days after the close of

the public hearing, id. § 1603.5 C, but does not set a deadline

for closing the public hearing.  The zoning officer must transmit

the recommendation of the ZBA to the mayor and city council

within ten days of the ZBA recommendation.  Id. 1603.5 (D).  The

zoning ordinance states that "not less than sixty (60) days"

after receipt of the recommendation the city council shall

approve, reverse, or modify the ZBA recommendation or refer it

back to the ZBA for further consideration.  Id. § 1603.6.  The

City presented evidence that including "less" was a scrivener's

error and that the City had always treated the ordinance as

requiring city council action in not more than sixty days.

The procedures for obtaining a special use permit apply to

all applications for a special use permit not only to exotic

dancing nightclubs.  The procedures, being of general

application, are not directed at protected speech and, therefore,

are not a form of censorship and are distinguishable from the

licensing scheme stricken in FW/PBS.  See MacDonald, 243 F.3d at

1035 (regulations governing parade permits did not involve

evaluation of content of message and were not form of

censorship).  Illinois law provides a remedy if a decision is

unduly delayed on a zoning application.  An applicant can bring a

common law writ of certiorari in the Illinois courts where a

municipality fails to bring a zoning matter to a vote.  See River

Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir.

1994); Graff, 9 F.3d at 1323-25 (plurality opinion) (writ of
certiorari adequate judicial review in First Amendment case)
(applying Illinois law). The challenged ordinance provisions,
when viewed in the context of Illinois law, do not allow the City
to indefinitely delay a decision on a special use permit.
Accordingly, the concern that delay amounting to unfettered
discretion can occur is not founded. The ordinance is not, on
its face, an unlawful prior restraint.[5]

## C. **Secondary Effects**

The City argues ordinance 2002-308-0 is a proper time,
place, and manner restriction enacted, not to suppress
expression, but to control deleterious secondary effects which
are associated with exotic dancing nightclubs. RVS counters that
the City did not do any studies, rely on any studies done
elsewhere, or, in fact, rely on any evidence at all to support
its claim these types of businesses create undesirable secondary
effects. The City argues the ZBA minutes and codes and
regulations committee minutes reflect the City relied on its own
experience that this type of use attracts prostitution and
creates secondary effects similar to those associated with

---

[5] RVS also argues that the ordinance fails to provide for
prompt judicial review of a denial of a special use permit as
required by Freedman v. Maryland, 380 U.S. 51 (1965). However,
the availability of the common law writ of certiorari provides
adequate opportunity for judicial review. See Graff, 9 F.3d at
1323-25; Thomas v. Chicago Park Dist., 227 F.3d 921, 926-27
(2000), aff'd, 536 U.S. 316 (2002).

14

sexually oriented businesses.  The City introduced police

incident summaries showing prostitution and soliciting for

prostitution police calls for 2001 and 2002.  The City presented

evidence that many of these calls were in an area where sexually

oriented businesses and some exotic dancing nightclubs were

located.  Alderman Nancy Johnson testified to complaints from

neighbors of a club featuring exotic dancers received several

years ago shortly after the club opened concerning damage done to

their property by club patrons.  On the other hand, RVS presented

expert evidence from Dr. Daniel Linz that studies he has

conducted and studies he has reviewed show there are no adverse

secondary effects, such as increased crime or lower property

values in the surrounding area, associated with establishments

featuring nude or semi-nude dancing.  He testified he found no

studies concerning secondary effects of establishments where

performers wear clothing, essentially a bathing suit, as

described in the ordinance.

Both parties agree that the court should look to <u>Ben's Bar,</u>

<u>Inc. v. Village of Somerset</u>, 316 F.3d 702 (7th Cir. 2003), to

resolve the secondary effects question.  In order to justify a

content-based time, place, or manner restriction or a content-

based regulation of expressive content the City must show its

ordinance has the purpose and effect of suppressing secondary

effects while leaving the quantity and accessibility of speech

substantially intact. Ben's Bar, 316 F.3d at 725. In Ben's Bar, the village made legislative findings based "on evidence concerning the adverse secondary effects of Sexually Oriented Businesses on the community in reports made available to the Village Board and on the holdings and findings in [numerous Supreme Court, federal appellate, and state appellate judicial decisions], as well as studies and summaries of studies conducted in other cities," id. at 704, and findings in certain other reports. These findings included the conclusions that crime occurs more frequently in neighborhoods with sexually oriented businesses and that property values in those neighborhoods were lower. Id. The village used these findings as the basis for prohibiting the sale of liquor in establishments providing nude or semi-nude dancing.

The City did not make any specific legislative findings when the city council adopted the ordinance. The City's rationale for the ordinance is found in the minutes of the ZBA hearing and the codes and regulations committee. The ZBA minutes say, "It is the City's experience that this use in a concentrated area or near residential uses attracts prostitution and other problems that are part of this atmosphere. Alderman Mark stated there have been incidents where liquor sales were procured with the intent of establishing dancing clubs. The proposed text amendments would allow the City more control over the location of these type

of clubs to prevent adverse effects on adjoining neighborhoods."
The minutes of the council's codes and regulations committee
meeting for November 27, 2002, contain the following: "Although
they are not considered sexually oriented business [sic], strip
clubs have similar secondary effects in the neighborhood as
sexually oriented businesses." The City was not required to
conduct new studies, rather the question is whether the evidence
relied upon is reasonably believed to be relevant to the problem
being addressed. Id. at 725. The City relied on its experience
that these types of uses are associated with higher incidents of
prostitution activity. RVS presented expert evidence that in the
studies conducted and reviewed by Dr. Linz in other locations the
results showed no adverse secondary effects from adult
businesses. However, the "invocation of academic studies said to
indicate that the threatened harms are not real is insufficient
to cast doubt on the experience of the local government." City
of Erie v. Pap's A.M., 529 U.S. 277, 300 (2000) (plurality
opinion) (citing Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 394
(2000)). City is entitled to rely on its knowledge of its own
streets "*and if its inferences* appear reasonable, we should not
say there is no basis for its conclusion." Ben's Bar, 316 F.3d
at 722 (emphasis in original) (quoting City of Los Angeles v.
Alameda Books, Inc., 535 U.S. 425, 451-52 (2002) (Kennedy, J.,
concurring)). The City was justified in relying on its

17

experience that exotic dancing nightclubs create undesirable secondary effects in the City of Rockford. Evidence based on studies conducted elsewhere is insufficient to overcome that experience.

The ordinance also must leave the quantity and accessibility of speech substantially intact. Ben's Bar, 316 F.3d at 725. Exotic dancing nightclubs are allowable as special uses in C-2, C-3, C-4, and I-1 zoning districts. ROCKFORD, ILL., ZONING ORDINANCE §§ 800.3.C.5, 800.4.F.12, 800.5.G.5, 900.2.G.3 (2002). To be eligible for a special use permit in these districts an exotic dancing nightclub must be at least 1000 feet from a church, school, residential district or another exotic dancing nightclub.

The City presented evidence by Wayne Dust its zoning administrator setting forth various sites that would qualify for a special use permit for an exotic dancing nightclub. The City's evidence showed eleven commercial sites and six industrial sites available for an exotic dancing nightclub. RVS presented the testimony and report of Bruce McLaughlin which concluded that only eleven to twelve sites, encompassing approximately twenty parcels were available in the City of Rockford for adult uses. McLaughlin excluded the industrial sites from consideration because they are not suited for generic commercial uses and probably could not meet the zoning ordinance's parking

18

requirements for a nightclub.[6]  However, he found more available
commercial sites than the City did.  McLaughlin concluded the
available parcels comprise less than one percent of the total
commercial properties in the city.

"The constitution does not mandate that any minimum
percentage of land be made available for certain types of speech.
What it does require is that zoning schemes that regulate the
location of speech provide a 'reasonable opportunity' to
disseminate the speech at issue."  North Ave. Novelties, Inc. v.
City of Chicago, 88 F.3d 441, 445 (7th Cir. 1996) (citing Renton
v. Playtime Theatres, Inc., 475 U.S. 41, 52 (1986)), cert.
denied, 519 U.S. 1056 (1997).  The focus is on the ability of
providers as a group to provide this type of expression and on
the ability of the public as a whole to receive it.  Id. at 444.
The evidence at trial showed that a significant number of
businesses that would fall within the definition of exotic
dancing nightclub are currently operating in the City of
Rockford.  Accepting McLaughlin's analysis shows that eleven to
twelve sites are available as possible sites for new providers.
Based on this evidence, the City provides a reasonable
opportunity to disseminate the speech at issue.  Id. at 445.  The
quantity and accessibility of this type of expression remains

_____

    [6]  A nightclub requires one parking space per sixty square
feet. ROCKFORD, ILL., ZONING ORDINANCE § 1300.6.

19

substantially intact.  See Ben's Bar, 316 F.3d at 725.

## D. Vagueness

RVS challenges ordinance 2002-308-0 as unconstitutionally
vague.  It claims the definition of "exotic dancer" is vague and
also that the 1000 foot requirement is vague because it does not
indicate from where to measure.  The City at trial produced
evidence that the proper points of measurement are from the
building on the premises at issue to the property line of the
conflicting use.  This is the measurement scheme used for
determining disqualification for sexually oriented businesses in
the zoning ordinance.  This is the basis the City used in
determining eligible sites as discussed in the previous section.
McLaughlin used a property line to property line method in his
determination of eligible sites.  While it is possible in some
situations this measurement method difference could be
significant, the evidence here is that any difference would be de
minimis.  No one seeking to open an exotic dancing nightclub
would be unable to locate a potential site because they did not
know whether to measure from the building or the property line.

RVS says it is not possible from the ordinance to determine
what makes someone an exotic dancer.  Its argument centers on
what the phrase "while wearing fully opaque clothing covering
over primarily only the genitalia, pubic region, buttocks and, if
the person is female, the portion of the breast below the top of

the areola" modifies.  The City essentially contends the phrase

modifies "person" so that any person who, while dressed in this

manner, performs a "striptease," erotic dance, or the other

described movements is an exotic dancer for purposes of the

ordinance.  RVS says it is unclear and that the phrase may only

modify "performing any movements simulating sexual activity,"

meaning that a person is an exotic dancer if the person performs

a "striptease," erotic dance, or other movements which include

touching the performer's breasts or pubic area, regardless of how

the performer is attired.  A law must have a reasonable degree of

clarity so that a person of ordinary intelligence can grasp its

import.  <u>Weinberg</u>, 310 F.3d at 1042.  When passing on the

vagueness of an ordinance federal courts will not hold an

ordinance unconstitutional "if a reasonable interpretation by a

state court could render it constitutional in some application."

<u>Gresham v. Peterson</u>, 225 F.3d 899, 908 (7th Cir. 2000).  Here, a

state court could reasonably accept the City's proffered

interpretation of the ordinance.  Because it is reasonable to

read the phrase under discussion as modifying "person," the

ordinance applies only to persons attired in the manner described

and is not unconstitutionally vague.

## E. Overbroad

RVS argues ordinance 2002-308-0 is unconstitutionally

overbroad because it would require a special use permit to be

obtained for a single performance at any venue by most companies

performing modern dance, many popular singers, and some popular

stage plays. The ordinance requires a business establishment to

have a special use permit for a premises where any person,

whether compensated or not, does a "striptease" or performs an

"erotic dance" or other movements including the performer

touching the performer's breasts or pubic area or performs any

movements simulating sexual activity while wearing clothing that

covers "primarily only the genitalia, pubic region, buttocks and,

if the person is female, the portion of the breast below the top

of the areola." In a facial overbreadth challenge, "there must

be a realistic danger that the [o]rdinance will significantly

compromise the First Amendment rights of parties not before the

[c]ourt." Schultz v. City of Cumberland, 228 F.3d 831, 850 (7th

Cir. 2000). If the ordinance is susceptible to a narrowing

construction that would make it constitutional, a facial

overbreadth challenge fails. Id. "A finding of overbreadth is

'strong medicine' to be used 'sparingly and only as a last

resort'". Farkas v. Miller, 151 F.3d 900, 905 (8th Cir. 1998)

(citing Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973)). The

City's zoning administrator testified that the zoning ordinance's

definition of "Nightclub" should be read into ordinance 2002-308-

0. This is reasonable considering the inclusion of the word

"Nightclub" in the term "Exotic Dancing Nightclub" which is being

defined by the ordinance. "Nightclub" is defined in the zoning ordinance as "[a] restaurant, bar or dance hall open to the general public that includes an assembly area of concentrated use without seating exceeding 150 square feet, such as a dance floor or standing room at a bar." ROCKFORD, ILL., ZONING ORDINANCE § 300 (2002). This reading narrows the venues susceptible to the special use requirement to certain restaurants, bars and dance halls. This eliminates dance company and theatrical performances from the ordinance's reach because they are not generally held in restaurants, bars, and dance halls. Legislation which applies only to the type of adult entertainment associated with harmful secondary effects withstands an overbreadth challenge. See Farkas, 151 F.3d at 905. In Farkas, the challenged statute excepted theaters, concert halls, art centers, and museums from its reach. Id. This limitation saved the statute from being overbroad. Id. Similarly, the City's ordinance, by limiting its reach to nightclubs, leaves other venues available for protected expression, without the need to obtain a special use permit.[7]

---

[7] RVS challenges its status as a nightclub under the ordinance on the basis that to be a "nightclub" the premises must have less than 150 square feet of seating area. This is a misreading of the ordinance. A "nightclub" is a restaurant, bar, or dance hall, open to the general public, that includes an assembly area, such as a dance floor or standing room at the bar exceeding 150 square feet. The size of the seating area is not relevant.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, RVS's motions for preliminary and permanent injunctions are denied.  Judgment is entered in favor of the City.  This case is dismissed in its entirety with prejudice.

**E N T E R:**

PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED:  June 10, 2003